CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAR 6 2018
JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

**JASON KESSLER**

Plaintiff,

v.

**CITY OF CHARLOTTESVILLE**

and

**MAURICE JONES**
Charlottesville City Manager
In his individual and official capacities

Defendants.

Case No.: 3:18CV00015

**COMPLAINT**

Comes now the Plaintiff, Jason Kessler, and for his Complaint against the above named Defendants, states as follows, to wit:

1. This is an action arising under the Constitution and laws of the United States for violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

## Parties

2. Plaintiff Kessler is a citizen of the United States and of Albemarle County, Commonwealth of Virginia.

3. Defendant City of Charlottesville ("the City") is a political subdivision of the Commonwealth of Virginia.

4. Defendant Maurice Jones is the City Manager for the City of Charlottesville in the Commonwealth of Virginia. At all relevant times, Defendant Jones acted and continues to act under color of state law. Defendant Jones is sued in his individual and official capacities.

## Jurisdiction and Venue

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(3). This case seeks remedies under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §1983 and 1988, and FRCP 65. This Court may issue a temporary restraining order and preliminary injunction pursuant to FRCP 65(b). Venue is proper over each claim and each defendant pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## Facts

6. The City of Charlottesville owns a park bounded by Jefferson Street, First Street N.E., Market Street, and Second Street N.E. ("the Park").

7. Since 1924, the park has boasted a statue of Robert E. Lee. Historically, the park was known as "Lee Park." See http://www.charlottesville.org/departments-and-

2

services/departments-h-z/parks-recreation-/parks-trails/city-parks/lee-park/history-and-gardens-of-lee-park, attached hereto as Exhibit A.

8. In February of 2017, the City voted to remove the Lee statue.

9. In April of 2017, the City voted to sell the statue, any buyer being required to remove it, apparently in violation of Virginia Code 15.2-1812, 1812.1 and a criminal act under 1812.2.

10. On June 5, 2017 the City renamed the Park "Emancipation Park."

11. The City's decision to remove the statute has resulted in a number of protests at the park including one by a former gubernatorial candidate.

12. Plaintiff opposes both the name change, the attempt to sell the statue and remove it from the park, and the political positions underlying both of those decisions. To communicate his political message, Plaintiff sought to organize a "Unite the Right" Rally in the park to express opposition to the City's plans for the park and the political positions underlying those plans.

13. Plaintiff's choice of location is critical to the message of the rally which specifically opposes City policy choices about the park and their underlying rationale.

14. Defendant City requires persons wishing to exercise their First Amendment rights on its public land to first obtain a permit.

15. Plaintiff Kessler properly applied for a permit on November 27, 2017 requesting the dates of August 11 and 12th 2018 for the purpose of a political demonstration. A copy thereof is attached as Exhibit B.

16. These dates are critical to Plaintiff's political message as they are they the one year anniversary of 2017's controversial "Unite the Right" rally and to allow the City to
3

wrongfully move Plaintiffs event off those dates, or outright deny him a permit, would dilute and alter his message.

17. On December 11, 2017 defendant Maurice Jones, on behalf of the City, sent Mr. Kessler a letter denying his requested permit, attached hereto as Exhibit C.

18. The City specified three reasons for the permit denial.

19. *The first reason* fails as the City has a legal obligation to protect protestors from violent counter protestors. The City may not rely on community hostility as an excuse to not protect, or to affirmatively trample upon, the First Amendment rights of Mr. Kessler. In addition, the City has already demonstrated that it has the ability to protect those exercising their free speech rights from those who would deny those rights, as it successfully did so during a rally on July 8, 2017. It's knowing and intentional choice not to do so for Unite the Right on August 12, 2017 does not relieve them of this obligation.

20. The City is well aware there is plenty of room at the requested park for a reasonably expected crowd size. The Court may take judicial notice that the Park is about one acre in size, that an acre is approximately 43,000 square feet, that an average adult takes up about 2 square feet at the hip level, and that the Park will theoretically accommodate about 20,000 people, cheek by jowl.

21. The City has granted permits for many other events, such as Charlottesville Earth Week 2016 (2,000 persons expected), Charlottesville Pride 2016 (4,000 persons), Festival of Cultures 2016 (3,000 persons), Festival of Cultures 2017 (3,000 persons), and the Tom Tom Founders Festivals 2017 (200-2500 persons). Copies of those permits are attached as Exhibit E. A few hundred attended the last Unite the Right

Rally, nowhere near filling the two barricaded areas established in less than half of the park. Perhaps a thousand "attended" illegally around the park on the public highways and sidewalks surrounding the park.

22. *The second reason* fails as Mr. Kessler sent written notice to the City on December 16, 2017 to Miriam Dickler and Michelle Christian stating that he would abide by the regular park operating hours, rendering this City objection nugatory.

23. *The third reason* fails as Mr. Kessler is an individual applicant and therefore cannot be held responsible for the actions of others as a condition of exercising his First Amendment rights, as the City is attempting to require.[1]

24. Prior to the first Unite the Right rally, City leaders publicly insulted and opposed Mr. Kessler's pro-monument political message. On June 21, 2017, with former Mayor Signer calling it message "racist" and "bigoted."

25. Former Vice Mayor Wes Bellamy, called Mr. Kessler's pro-monument message "fascist" on August 2, 2017.

26. On December 16, 2017, Mr. Kessler sent written notice to the City on December 16, 2017 to Miriam Dickler and Michelle Christian stating that he would abide by the regular park operating hours. Kessler's further attempts to point this out met only with instructions contact the City Attorney's office.

27. On January 29, 2017, Kessler, by his attorney, sent a letter to the City Attorney's office, asking the city to specify the terms and conditions upon which it would grant a permit. On February 23, 2018, the City only referred back to the denial letter of December 11, 2017, and pointed out the location of the city's Special Events Regulations. Exhibit D.

---

[1] The City specifically did not list failure to purchase insurance as a reason for denying Mr. Kessler a permit.

28. The City's current denial is another example of its pattern and practice of knowingly and intentionally denying First Amendment rights guaranteed by the United States Constitution. In Kessler v. City of Charlottesville, Civil Action No. 3:17cv000 56, the City issued, and then denied, a rally permit. In a well-reasoned opinion, this court granted the "extraordinary" remedy of a preliminary injunction because the denial of the permit was an unconstitutional content based restriction. Opinion of August 11, 2017, Document 21.

29. The very next day, August 12, 2017, the City defied this court's order. After intentionally closing its eyes to hundreds, if not thousands, of misdemeanors and felonies committed by the illegal, unpermitted rioters upon the rallygoers for approximately an hour, the City declared the *rally* an unlawful assembly on the grounds that "several" (unspecified, uncounted, and unnamed) rallygoers had thrown bottles of clear liquid, possibly resembling water, out of the permitted area. It then changed the location of the rally to----the streets full of enraged, illegal, unpermitted rioters, at least one of whom carried a sign that said "This Machine Kills Fascists."

30. While there are several months between now and Mr. Kessler's requested rally dates, the City's misconduct has placed Mr. Kessler in a position where few people will be willing to plan to attend. A reduced crowd will dilute Mr. Kessler's message.

31. Unless Defendants and their agents are enjoined, Plaintiff, other similarly-situated protesters who share his views, and other members of the public will be irreparably harmed as they will be prevented from peacefully gathering to

6
Case 3:18-cv-00015-NKM-JCH   Document 1   Filed 03/06/18   Page 6 of 8   Pageid#: 6

express their views on pressing issues of public concern at a time, place and in a manner reasonable for them to do so.

### First Cause of Action-First and Fourteenth Amendment

32. Plaintiff reasserts and realleges the foregoing paragraphs as though fully set forth.

33. Defendants' denial of the requested permit violated and, unless enjoined by this Court, will continue to violate, Plaintiff's rights to freedom of speech, assembly, and petition as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

34. The Defendants' denial of Plaintiff's permit was based on his viewpoint and was not necessary to achieve any compelling government interest, in violation of the First and Fourteenth Amendments;

35. To the extent that the denial of the permit was based on crowd size, said denial was not narrowly tailored to a substantial government interest, and did not leave open alternative means of communication.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

    A. Compensatory damages in an amount to be shown at trial, commensurate for a Defendant that has learned nothing from its last violation of the United States Constitution;

    B. Enter judgment declaring that Defendants' denial of Plaintiffs requested permit to hold a demonstration in Emancipation Park on August 11 and 12th, 2018 violates the First and Fourteenth Amendment to the United States Constitution;

7
Case 3:18-cv-00015-NKM-JCH   Document 1   Filed 03/06/18   Page 7 of 8   Pageid#: 7

C.  Enter a temporary restraining order and/or preliminary injunction enjoining Defendants to permit the demonstration to go on as planned in Emancipation Park on August 11-12, 2018 from 6 am to 11 pm, or in the alternative during regular park hours on the 12th, and to provide such security as may be necessary to protect the rights of the demonstrators and the public;

D.  Costs incurred in this action;

E.  Reasonable attorney fees;

F.  Such other and further relief as the Court may deem just and proper.

s/ Elmer Woodard
ELMER WOODARD (VSB 27734)
5661 US Hwy 29
Blairs, Va. 24527
(434) 878-3422
isuecrooks@comcast.net