IN THE UNITED STAES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **JASON KESSLER,** | Case No. 3:18-CV-00015 |
| Plaintiff, | (Judge MOON) |
| v. | |
| **CITY OF CHARLOTTESVILLE ET AL.** | **PLAINTIFFS MOTION FOR PRELIMANRY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER** |
| Defendants. | |

## INTRODUCTION

Plaintiff Jason Kessler is a Charlottesville VA resident and well known political activist. He was the principal organizer of the "Unite the Right" political rally held in Charlottesville on August 12, 2017. (hereafter "UTR1" for the 2017 event and "UTR2" for the proposed 2018 event.) Prior to holding UTR1 Mr. Kessler was forced to come before this Court and obtain Order compelling the City to permit UTR1 to occur.[1] This was necessary because many, if not all, elected officials in Charlottesville are opposed to Mr. Kessler's political message and so are loath to allow him to enjoy his First Amendment rights within Charlottesville city limits.[2]

UTR1 has achieved national infamy due to violence that occurred at the rally including the deaths of two law enforcement officers and one counter protestor, several acts of violence, and resulting criminal prosecutions. The rally was so marred by misconduct that

---

[1] Case # 3:17-cv-00056 Kessler v. Chalrottesville et al. The Court may, and should, take judicial notice of the evidence and orders located in the UTR1 permit litigation.
[2] Kessler declaration

defendant Charlottesville commissioned a third party report to help it understand and address what went wrong.[3]

The Heaphy Report could not have been more clear that counter protestor violence is principally what went wrong.[4] As is well known to the City, both before UTR1 and since the issuance of the Heaphy Report, there is a tiny but hyperactive group of persons who are opposed to anything remotely approaching Mr. Kessler's political message[5] This counter protestor activity is a classic "heckler's veto" of Mr. Kessler's speech. The City, understandably, does not want any violence occurring within it's jurisdiction.

The City knew before UTR1 that counterpotestor violence was likely in reaction to Mr. Kessler's political speech. The City didn't bother to separate counter protestors from Mr. Kessler's UTR1 rally. As a direct result of the City's failures, violence occurred at UTR1.[6] Unbelievably, the City now uses the results of it's own misconduct to justify the outright denial of a permit to Mr. Kessler to hold UTR2, as well as to conceal the true, content based, reason for the City's denial of Mr. Kessler's requested permit.

**A. Mr. Kessler applies for a permit for UTR2 and is denied by the City**

Jason Kessler applied for a permit to rally in Charlottesville's Emancipation Park for August 11 and 12, 2018. The City received Mr. Kessler's application on November 27, 2017. In a change of strategy from last year, the City outright denied Mr. Kessler a permit by letter over the signature of defendant Jones on December 11, 2018. The denial letter proffered three reasons why Mr. Kessler could not rally in Emancipation Park: First, that UTR2 presents a danger to public safety; Second that Mr. Kessler requested a permit for times when the park is

---

[3] Heaphy Report attached to Declaration of Kessler
[4] Heaphy at p. 3; 162; 182-183; 187.
[5] These persons are often referred to, or call themselves, AntiFa. See Heaphy at pg. 123 "Antifa refused to agree to non-violence."
[6] Heaphy p. 162.

not available for use; and Third, that Mr. Kessler has not obtained insurance for the UTR2 event. Each City objection fails and so Mr. Kessler is entitled to requested permit.

1. **UTR2 does not present a danger to public safety**

The Heaphy Report established that counter protestors threatened violence prior to UTR1 and that counter protestors engaged in violence at UTR1.[7] Mr. Kessler has received or is aware of numerous threats of counter protestor violence regarding UTR2.[8] Counter protestor misconduct constitutes a heckler's veto and cannot be used as a justification to shut down Mr. Kessler's speech by the City. <u>Berger v. Battaglia</u>, 779 F.2d 992, 1001 (4th Cir. 1985).

At deposition the City repeatedly referred to "prior experience" with Mr. Kessler as what the City means by danger to public safety. [9] However, when asked to be more specific the City merely referred to two sections of the Complaint in separate litigation and one section of the Heaphy Report.[10]

The Heaphy Report concludes that there were no real injuries or property damage on August 11 torchlight rally portion of UTR1. It further reports that the UVA police chief was unimpressed with the torchlight rally and the only real problem with that portion of UTR1 was the content of the speech.[11]

As to August 12 portion of UTR1 Mr. Kessler's demurrer is pending in state court and the City simply cannot rely on unproven allegations or allegations of legal conduct to justify their permit denial. In addition the City's own Heaphy Report concludes that counter

---

[7] Heaphy p 123, 129, 146, 162, 182, 187
[8] Kessler declaration
[9] Deposition transcript pending
[10] Deposition transcript pending
[11] Heaphy p. 120.

protestors are the source of the problems that the City now wishes to call "prior experience with Jason Kessler". [12]

The City can not use heckler's veto activity and it's own failures as an excuse to deny Mr. Kessler a permit. Therefore, the City's first listed reason fails to support it's denial of Mr. Kessler's permit.

### 2. UTR2 need not operate outside normal park hours

At deposition the City admitted that it's second listed reason for denial was insubstantial and easily remedied. That is, the City admitted that it is possible to simply grant a permit for possible park operating hours independent of what hours were requested in a permit.

The City did not explain why this common courtesy was not being extended to Mr. Kessler but did state that Kessler had not amended his application to list the correct hours. In this the City is in error. While it is technically true that Mr. Kessler did not file an amended application, it is also true that Mr. Kessler e-mailed the City and offered to restrict UTR2 to the appropriate hours. [13] Therefore, the City's second listed reason fails to support it's denial of Mr. Kessler's permit.

### 3. Mr. Kessler need not have insurance to hold UTR2

The City's third listed reason is expressed in the bureaucratic terminology of the City's policy manual. At deposition however, the City admitted that this reason refers to Mr. Kessler not having obtained event insurance for UTR2. But the City did not require insurance for an event such as UTR2 at the time Mr. Kessler applied for a permit. [14] In addition Mr. Kessler was unable to obtain event insurance for UTR1 due to counter protestor complaints to

---

[12] Heaphy p 123, 129, 146, 162, 182, 187
[13] Kessler declaration
[14] Kessler declaration

the insurance company.[15] The City may not use prohibitively expensive, much less practically unattainable insurance as a reason to deny a permit. Forsyth County v. Nationalist Movement, 505 U.S. 123, 133 (1992).

Therefore, the City's third listed reason fails to support it's denial of Mr. Kessler's permit.

B. Preliminary Injunction

1. **The City's ongoing attacks on Mr. Kessler's First Amendment rights is based on the content of his speech**

The principal inquiry in determining content-neutrality in speech cases generally is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. Clark v. Community for Creative Non-Violence, 468 U.S. 288, 295 (1984). The government's purpose is the controlling consideration.

City elected officials are mostly, or entirely, opposed to Mr. Kessler's free speech activity.[16] The City admitted at deposition that a great deal of political pressure is being brought to bear on the subject of Mr. Kessler and his political activity.[17] And, the City has done nothing since UTR1 to alter the finding of this Court that the City illegally revoked the UTR1 permit based on the content of Mr. Kessler's speech.[18] The conclusion is inescapable. The City is suppressing Mr. Kessler's speech due to it's content. The City may not join in or acquiesce in a heckler's veto of Mr. Kessler's speech. Berger v. Battaglia, 779 F.2d 992, 1001 (4th Cir. 1985), Lefemine v. Wideman, 672 F. 3d 292 (4th Cir. 2012) at FN 3. The City may

---

[15] Kessler declaration
[16] Kessler declaration
[17] Deposition transcript pending
[18] 3:17cv00056 at DE 21 Order of the Court

not deny Mr. Kessler a permit based on the content of his speech. Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015.)

### 2. Mr. Kessler has a likelihood of success on the merits

As shown above none of the City's proffered reasons for denying Mr Kessler a permit for UTR2 are legitimate as applied to Mr. Kessler and UTR2. The City is not even attempting to narrowly tailor it's response to the UTR2 application to protect Mr. Kessler's rights. They just want him to go away. This the City cannot do. Mr. Kessler will likely succeed on the merits of his claims and is therefore entitled to his requested relief.

### C. Conclusion

For all the reasons above, Mr. Kessler is likely to succeed on the merits of his claims, has a First Amendment right to organize and engage in the UTR2 rally, and is therefore entitled a permit for same.

Accordingly, this Court should grant a preliminary injunction and/or temporary restraining order compelling the City to issue Mr. Kessler a permit for UTR2.

Respectfully Submitted,

s/ James E. Kolenich PHV
_____
James E. Kolenich (OH 77084) PHV
KOLENICH LAW OFFICE
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
(513) 444-2150
(513) 297-6065 (fax)
jek318@gmail.com
*Trial Attorney for Plaintiff*

s/ Elmer Woodard
_____
Elmer Woodard (VSB  27734)
5661 US Hwy 29
Blairs, Va. 24527
(434) 878-3422
isuecrooks@comcast.net
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

A true copy of the foregoing was served via the Court's CM/ECF system on June 22, 2018 as listed below:

*All parties of record*

No one entitled to service has requested or is need of service by other means.

**s/ James E. Kolenich  PHV**

_____
James E. Kolenich (OH 77084)