# EXHIBIT E

```
 1              MR. LONGSTRETH:  I've got a document
 2       that I would like to have marked as
 3       Defendants' Exhibit 14.
 4
 5              (Defendants' Exhibit 14 marked for
 6       identification)
 7
 8  BY MR. LONGSTRETH:
 9       Q.   You can talk a look at it, I'm just
10   going it ask you if you recognize it?
11       A.   Yes.
12       Q.   Was that -- well, just describe what it
13   is?
14       A.   It's a tweet.
15       Q.   Okay.  From?
16       A.   Richard Spencer.
17       Q.   Okay.  And is this where he is
18   responding to your tweet about Heather Heyer?
19       A.   Yes.
20       Q.   Okay.  And he says he will no longer
21   associate with you.  Has he no longer associated
22   with you?
23       A.   Pretty much.
24       Q.   Well, is pretty much, what is the
25   difference between pretty much and no?
```

(434) 293-3300　　　　Reported by Kimberly A. Felder　　　　(800) 972-1045
Case 3:18-cv-00015-NKM-JCH   Document 25   Filed 06/29/18   Page 2 of 17   Pageid#: 445
www.cavalier-reporting.com　　　　Draft/Unedited Copy　　　　info@cavalier-reporting.com

```
 1        A.    Yes.
 2        Q.    Okay.  Did you transfer over any
 3   information from the 5 to the 8?
 4        A.    Yes.
 5        Q.    What information?
 6        A.    All of it.  Everything that was on the
 7   other phone is on the new phone.
 8        Q.    Okay.  So, even any texts or e-mails
 9   that were on that phone?
10        A.    Yes.
11        Q.    Okay.  You got a document request from
12   us, do you recall that?
13        A.    Yes.
14        Q.    Okay.  Did you look at your phone to
15   find out if you had any texts that might be
16   responsive to that document request?
17        A.    The texts are in the -- yeah, we turned
18   over the texts.
19        Q.    You did turn over the texts?
20        A.    Yes.
21        Q.    And where are those?
22        A.    Those are in the Drop Box folder.
23        Q.    Okay.  Do you recall any particular
24   texts in there that you turned over?
25        A.    There are -- I put everything in there.
```

(434) 293-3108　Reported by Kimberly A. Keller　(800) 972-1446
Case 3:18-cv-00015-NKM-JCH   Document 25   Filed 06/29/18   Page 3 of 17   Pageid#: 446
www.cavalier-reporting.com　Draft/Unedited Copy　info@cavalier-reporting.com

1  document provided to us in discovery?
2      A.   What document?
3      Q.   The document that is just been marked
4  as Dx 15?
5      A.   We mentioned that all of my public
6  posts are available.  So we gave information about
7  the Gab account, which this is referencing.
8      Q.   Okay.  So, your understanding is that
9  if we can go find it ourselves, you don't have to
10 produce it in discovery, is that your
11 understanding?
12     A.   I don't have any understanding of
13 discovery.  I just gave information to my
14 attorneys.
15     Q.   Okay.  When did you edit this document?
16     A.   I don't recall.
17     Q.   Okay.  When you say you gave
18 information to your attorneys, you posted the
19 documents under the Drop Box yourself; is that
20 correct?
21     A.   Yes.
22     Q.   Okay.  Do you recall this having been
23 posted about a month or so ago?
24     A.   Yes.
25     Q.   So this was after the lawsuit was

1   Mr. Kolenich is on the line?
2        A.   Well, we will look into it and make
3   sure that that's provided.
4        Q.   We sent you a note, I guess, on Friday.
5   Did you got a copy of that?
6        A.   I was not made aware of the discovery
7   request until after it was already due.  So I had
8   to rush to get everything available.  So, we will
9   do our best to provide anything to you guys.
10       Q.   Okay.  Were you made aware of our
11  letter to Mr. Kolenich on last Friday suggesting
12  deficiencies in your discovery responses?
13       A.   I don't think so.
14       Q.   Okay.
15            MR. LONGSTRETH:  Jim, can you share
16       that with your client, please.
17            MR. KOLENICH:  Yeah, John, we will go
18       over it.  Obviously his answers here are --
19       he is not talking about the process where we
20       determine what goes into the Drop Box or not,
21       because that's privileged, so...
22            MR. LONGSTRETH:  No, I understand.
23            MR. KOLENICH:  He's accurate in the
24       fact that, you know, this be privileged, too,
25       but to the best of our knowledge, we haven't

1    A.   I just don't -- I can't think of
2    anything other than those e-mails and
3    communications with my attorneys that has to do
4    with this rally.
5    Q.   Okay.  Did you do a search function on
6    your e-mail server?
7    A.   Yeah.
8    Q.   You did a search function.  What search
9    terms did you use?
10   A.   I think I used Unite the Right, UTR 2,
11   that kind of thing.
12   Q.   Okay.  Can you recall that with any
13   more specificity?
14   A.   Those are the search terms that I use
15   was Unite the Right 2, UTR 2.
16   Q.   Okay.  Did you receive any direction
17   from your attorney as to how to respond to the
18   discovery?
19   A.   Not really.
20        MR. KOLENICH:  I will object to that.
21   And, Jason, don't answer that.
22        MR. LONGSTRETH:  Okay.
23   BY MR. LONGSTRETH:
24   Q.   You did testify that you were not made
25   aware of the discovery until after the date it was

(434) 293-3108   Case 3:18-cv-00015-NKM-JCH   Document 25   Filed 06/29/18   Page 6 of 17   Pageid#: 449
www.cavalier-reporting.com   Reported by Kimberly Aikeder   (800) 972-1945
Draft/Unedited Copy   info@cavalier-reporting.com

```
 1    Q.   Did you search the hard drive on your
 2  computer for responsive documents?
 3    A.   We turned it over in the Drop Box.
 4    Q.   Can you answer my question?
 5    A.   Yes.
 6    Q.   You did.  How did you make that search?
 7    A.   Went into the Drop Box and saw what we
 8  had in there.
 9    Q.   No, I'm talking about -- let me back
10  you a little bit.  Do you own a personal computer?
11    A.   Yes.
12    Q.   And what type of computer, what model?
13    A.   I don't know.
14    Q.   It's a laptop or a?
15    A.   I have a personal computer, yes.
16    Q.   So is that a laptop?
17    A.   I have a laptop and a personal desktop
18  is what it is.
19    Q.   A laptop and a desktop, okay.
20         Did you search the files stored in
21  either of those to determine if you had responsive
22  documents?
23    A.   Yes.
24    Q.   How did you do that search?
25    A.   We have been compiling -- as I go
```

1  along, every single document that I have that is
2  relevant to these cases I put them into the Drop
3  Box. And we provided you guys with the Drop Box
4  link.
5      Q.  So, you made no separate search when
6  you got our discovery requests, you just assumed
7  everything was -- had been put into the Drop Box
8  based on your assessment previously of what was
9  relevant to your case, is that the testimony?
10     A.  No. The stuff that was relevant to
11 this case, which had not been disclosed in other
12 legal proceedings were the Facebook messages which
13 was like 400 pages of Facebook massages which we
14 turned over.
15     Q.  Okay. So the only thing that you gave
16 us that you hadn't already provided in these other
17 cases was the 400 pages of Facebook messages?
18     A.  That's all that I have that's really --
19 as far as I'm aware, that's all that I have that
20 is relevant to this that isn't relevant to the
21 other stuff.
22     Q.  And are those the Facebook messages
23 that you put in the Drop Box and then you later
24 took them out, redacted them and put a new version
25 in?

(434) 293-3108 Case 3:18-cv-00015-NKM-JCH Document 25 Filed 06/29/18 Page 8 of 17 Pageid#: 451 (800) 972-4531
www.cavalier-reporting.com Reported by Kimberly A. Keller info@cavalier-reporting.com
Draft/Unedited Copy

```
 1    you have sent or received in the last year?
 2         A.    Yes.
 3         Q.    It will.  And in responding to our
 4    discovery requests, what did you do with respect
 5    to those e-mails?
 6         A.    I searched for the key terms and I
 7    forwarded those to my attorney.
 8         Q.    Okay.  And again, what were the key
 9    terms you used --
10         A.    Unite the Right --
11         Q.    -- to the best of your recollection?
12         A.    -- 2 and UTR 2.
13         Q.    Anything else?
14         A.    Not that I can recall.
15         Q.    Just those two, Unite the Right 2 or
16    UTR 2?
17         A.    Uh-huh.
18         Q.    Okay.  So, for example, did you search
19    for the name Boechat?
20         A.    No.
21         Q.    Okay.
22         Q.    So basically your e-mail that's through
23    Gmail, what if you create a word document, is that
24    saved to the hard drive on either of your laptop
25    or your desktop?
```

Case 3:18-cv-00015-NKM-JCH   Document 25   Filed 06/29/18   Page 9 of 17   Pageid#: 452
(434) 293-3108　　　Reported by Kimberly A. Heider　　　(800) 972-4952
www.cavalier-reporting.com　　　Draft/Unedited Copy　　　info@cavalier-reporting.com

1  A. I save my word documents to the Drop
2  Box.
3  Q. Every word document you create you save
4  to the Drop Box?
5  A. No. But the ones that are related to
6  this case I either create them for the Drop Box or
7  I transfer them to the Drop Box.
8  Q. Okay. So, your testimony is that as
9  you go along, anything that's related to your
10 various litigations, as soon as you create it, you
11 put it in the Drop Box?
12 A. As soon as I realize that it is
13 relevant to this, to the Charlottesville Unite the
14 Right litigation cases, I put it in there.
15 Q. Okay. So, how often do you update that
16 Drop Box?
17 A. Fairly regularly, every week.
18 Q. So, where do you store the documents
19 while you are waiting to load them into the Drop
20 Box?
21 A. If it's related to these cases, I
22 almost always store it in the Drop Box.
23 Q. Just right away, as soon as it's
24 created, you don't wait a week?
25 A. Yeah. I either save it directly to the

Case 3:18-cv-00015-NKM-JCH Document 25 Filed 06/29/18 Page 10 of 17 Pageid#: 453
(434) 293-3300 — Reported by Kimberli A. Ledford — (800) 972-1953
www.cavalier-reporting.com — Draft/Unedited Copy — info@cavalier-reporting.com

```
 1   so that we can download that production, which I
 2   think is similar to what we did in this case.
 3   Once that seven days is passed and we no longer
 4   have access to the Drop Box, will we get a
 5   notification, we, opposing attorneys in the case,
 6   get a notification when you update the Drop Box?
 7       A.   Not every single time that it's
 8   updated.  But, you guys will receive all
 9   responsive documents within the period of time
10   before the trial.  You will receive everything
11   that you are asking for.
12       Q.   Because why, because your attorneys
13   will then be notified that you've updated the Drop
14   Box and they will let us know?
15       A.   If we need to give people access to the
16   Drop Box again to get further documents, then
17   that's what we will do.  We are doing the best we
18   can.
19       Q.   Right.  Yeah.
20            Okay.  If you are in a chat room
21   talking about Unite -- talking about UTR, how are
22   those documents preserved?
23       A.   Well, with the 300 plus pages of chat
24   room documents that I provided in this case, what
25   I did was I downloaded a copy of that and then I
```

Case 3:18-cv-00015-NKM-JCH Document 25 Filed 06/29/18 Page 11 of 17 Pageid#: 434
(434) 293-3300 — Reported by Kimberly Alderfer — (800) 972-1455
www.cavalier-reporting.com — Draft/Unedited Copy — info@cavalier-reporting.com

```
 1      Q.   Well, your understanding is if we can
 2   find it publicly, you don't have to provide it in
 3   your discovery, is that your understanding?
 4      A.   My understanding is that providing you
 5   with the location where you can find it is
 6   providing it.
 7      Q.   Okay?
 8      A.   You have access.
 9      Q.   Okay.  Can you have a private chat on
10   Facebook?
11      A.   Yes.
12      Q.   That's not publicly available; right?
13      A.   Right.
14      Q.   But you say you have provided --
15      A.   Yes, with he have.
16      Q.   Some hundred pages.  Can you have a
17   private chat on VK?
18      A.   Yes.
19      Q.   Were we provided any of those?
20      A.   I don't have any.
21      Q.   Okay.  Can you have a private chat on
22   Signal -- I'm sorry, what's Signal?
23      A.   Signal is another messenger service.
24      Q.   Can you have a private chat on Signal?
25      A.   You can.
```

Case 3:18-cv-00015-NKM-JCH Document 25 Filed 06/29/18 Page 12 of 17 Pageid#: 495
(434) 293-3300  Reported by Kimberly A. Ledel (k)  (800) 972-1455
www.cavalier-reporting.com  Draft/Unedited Copy  info@cavalier-reporting.com

```
 1      Q.    Were we provided any documents from
 2   that?
 3      A.    I don't have any responsive documents.
 4      Q.    How do you know that?
 5      A.    Because it's another privacy messenger
 6   that wipes itself after a certain period of time.
 7      Q.    So, basically any documents you are
 8   creating concerning the UTR 2 on Signal, you
 9   create those documents and then they are wiped out
10   a week later?
11      A.    They are not saved.
12      Q.    They are not saved?
13      A.    I don't wipe them.  It just is an
14   application that does not save those things.
15      Q.    Okay.  So, are you doing anything to
16   preserve those before they are not saved by Signal
17   or VK or any of these other services?
18      A.    No.
19      Q.    When you go on to these private chats
20   is the purpose of that so you can have discussions
21   about the rally and keep it private?
22      A.    Yes.
23      Q.    And then after a week, those
24   discussions will disappear; is that correct?
25      A.    However long the period of time is,
```

Case 3:18-cv-00015-NKM-JCH Document 25 Filed 06/29/18 Page 13 of 17 Pageid#: 456
(434) 293-3300 — Reported by Kimberli Alderfer — (800) 972-1995
www.cavalier-reporting.com — Draft/Unedited Copy — info@cavalier-reporting.com

```
 1   Discord is public.
 2        Q.   Okay.  That's all private?
 3        A.   Yeah.
 4        Q.   Okay.  And did you search for any
 5   documents available to you on the Discord server
 6   related to UTR 2?
 7        A.   I'm not aware that I have anything
 8   responsive to that.
 9        Q.   How do you know that?
10        A.   Because I haven't been using Discord.
11        Q.   When did you stop using Discord?
12        A.   Months ago.
13        Q.   How many months ago?
14        A.   I can't recall.  But, I haven't -- in
15   any case, it was -- I'm not aware of anything that
16   is responsive to Unite the Right 2 that was on the
17   Discort.
18        Q.   Okay.  Did the document request also
19   ask for documents responsive to -- concerning
20   Unite the Right 1?
21        A.   I don't recall.
22        Q.   It did.  I can tell that you did it.
23   Did you search on the Discord server for those?
24        A.   No.
25        Q.   Why not?
```

1  Q.  Okay.  Can you describe how that
2  process works, so you posted it to Gab AI?
3  A.  Yeah.
4  Q.  And then how does it go to Twitter
5  automatically?
6  A.  There's a box you can check to have it
7  post on Twitter.
8  Q.  So you checked that box and it went on
9  Twitter?
10  A.  Yes.
11  Q.  And this is a document that concerns
12  UTR 2; right?
13  A.  Yes.
14  Q.  Was it provided to us in discovery?
15  A.  No.
16  Q.  Why not?
17  A.  I was under the impression that you
18  guys could look this stuff up, since it's publicly
19  available.
20  Q.  Okay.  So, you had no obligation then
21  to go through your Twitter account to pup and send
22  responsive information, that was your
23  understanding?
24  A.  We will do that going forward.
25      MR. KOLENICH:  I'm going to object and

(434) 293-3300 — Reported by Kimberli Alderfer — (800) 972-1858
Case 3:18-cv-00015-NKM-JCH   Document 25-6   Filed 06/29/18   Page 15 of 17   Pageid#: 458
www.cavalier-reporting.com — Draft/Unedited Copy — info@cavalier-reporting.com

```
 1   who get on the e-mail list.
 2        Q.    Okay.  But if are you not on the e-mail
 3   list, have you no way of seeing that
 4   communication.  I mean, it's a private e-mail
 5   account; right?
 6        A.    Anybody is allowed to go on to the
 7   website and Sipe up for the e-mail list.
 8        Q.    Oh,?
 9        A.    And there's a publicly available
10   website.
11        Q.    Okay.  What is that site?
12        A.    Www.unite the Right rally dot-com.
13        Q.    Okay.  So, somebody can go onto that
14   site and get on your e-mail list?
15        A.    Yes.
16        Q.    And then see all the e-mails you send
17   to that list?
18        A.    Yes.
19        Q.    Do you have any nonpublic
20   communications sites for the rally?
21        A.    There's only the planning group, which
22   is the Facebook messengering and like I said, we
23   have a small group that talks on Signal.
24        Q.    Okay.  How many people are in that
25   planning group?
```

1   and that right is useless if their identities

2   can be discovered by means of suing people

3   participating publicly and conducting

4   discovery.

5   BY MR. LONGSTRETH:

6   **Q.     Even?**

7   A.     So, other.

8         MR. KOLENICH:  So, otherwise we are

9   going to decline to identify the person.

10        MR. LONGSTRETH:  And you are taking

11  that position even though we have proposed a

12  confidentiality order that would allow you to

13  designate that information is confidential

14  and usable only for the purposes of the

15  litigation.

16        MR. KOLENICH:  Well, I mean, have we

17  entered into a confidentiality agreement, I'm

18  not aware that we have done that yet.

19        MR. LONGSTRETH:  Well, we have two

20  agreements, Jim, we have the first agreement

21  that when you sent the information to us in

22  discovery, you asked we hold it as

23  confidential.  We agreed to that on a

24  temporary basis because obviously much of it

25  included public information and could not

Case 3:13-cv-00015-NKM-JCH  Document 25-6  Filed 06/29/18  Page 17 of 17  Pageid#: 430
(434) 293-3300  Reported by Kimberli Ledford  (800) 972-1993
www.cavalier-reporting.com  Draft/Unedited Copy  info@cavalier-reporting.com